## CROSON v. DISTRICT OF COLUMBIA.

(Court of Appeals of District of Columbia. Submitted November 3, 1924. Decided December 1, 1924.)

No. 4123.

1. **District of Columbia** ⊂⇒2—**District municipality with right to sue and be sued.**

The District of Columbia as a municipal corporation has the right to sue and be sued.

2. **District of Columbia** ⊂⇒2—**Supreme legislative power is Congress.**

The District of Columbia possesses no sovereign power, but its supreme legislative power is Congress, the authority of Congress to legislate being plenary.

3. **District of Columbia** ⊂⇒22—**Police regulations for permit to automobile drivers held authorized.**

General powers conferred on commissioners of District of Columbia by Act Jan. 26, 1887, Act Feb. 26, 1892, and Act March 3, 1917, empowered commissioners to make police regulations providing for issuance of permits to automobile drivers, and making driver's failure to exhibit permit when required, punishable.

4. **Criminal law** ⊂⇒304(2)—**Traffic conditions in District of Columbia judicially known to court.**

The Court of Appeals of the District of Columbia has judicial knowledge of traffic conditions in the District.

5. **District of Columbia** ⊂⇒22—**Police regulations as to permits to automobile drivers held applicable to government employees driving government-owned automobiles.**

Police Regulations of District of Columbia 1921, art. 12, § 3, par. (a), providing for issuance of permits to automobile drivers, and section 19, making failure to exhibit permit punishable, *held* applicable to employees of United States government when driving automobiles owned by the government on public business, in view of Act Feb. 26, 1892, and Act March 3, 1917.

6. **Statutes** ⊂⇒181(1)—**Construction of act of Congress is question of congressional intent.**

Construction of act of Congress relating to District of Columbia is question of congressional intent.

Writ of Error to Police Court.

Louis M. Croson was convicted of failure to exhibit permit to operate automobile on request therefor, and he brings error. Affirmed.

Peyton Gordon and J. B. Horigan, both of Washington, D. C., for plaintiff in error.

F. H. Stephens, F. W. Madigan, and E. W. Thomas, all of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. This writ of error to the police court involves the question whether the police regulation of the District of Columbia, requiring automobile drivers to exhibit permits when demanded by a police officer, applies to an employee of the United States government when driving an automobile owned by the government and on public business. Plaintiff in error was a government employee, and on April 1, 1922, while operating a government automobile, failed to exhibit the permit issued to him. After prosecution and conviction, he sued out this writ.

[1, 2] The District of Columbia, as a municipal corporation, has the right to sue and be sued, but it possesses no sovereign power. U. S. v. Cella, 37 App. D. C. 423. "Its supreme legislative body is Congress." Met. R. Co. v. D. C., 132 U. S. 1, 10 S. Ct. 19, 33 L. Ed. 231. The authority of Congress, as the Legislature of the District, is plenary. Wash A. & Mt. Vernon Ry. v. Downey, 236 U. S. 190, 35 S. Ct. 406, 59 L. Ed. 533; Hyde v. S. Ry. Co., 31 App. D. C. 466. This, therefore, is not a case of conflicting jurisdictions, as in Johnson v. Maryland, 254 U. S. 51, 41 S. Ct. 16, 65 L. Ed. 126, but rather one involving the intent of the sole legislative body.

Act Jan. 26, 1887 (24 Stat. 368), "to authorize the commissioners of the District of Columbia to make police regulations," empowered the commissioners, among other things, "to regulate the movements of vehicles on the public streets and avenues for the preservation of order and the protection of life and limb." Under Act Feb. 26, 1892 (27 Stat. 394), the commissioners were "authorized and empowered to make and enforce all such reasonable and usual police regulations, in addition to those already made under the Act of January 26, 1887," as they might "deem necessary for the protection of lives, limbs, health, comfort, and quiet of all persons and the protection of all property within the District of Columbia." This additional grant was couched in broad and comprehensive terms. Siddons v. Edmonston, 42 App. D. C. 459, 464.

Act March 3, 1917 (39 Stat. 1004, 1012), provided that after December 31st of that year "all licenses, including identification tags and registrations, for motor vehicles" should expire, and that thereafter there should be paid annually to the collector of

taxes of the District a schedule of fees for registration and identification number tags: Provided, "that motor vehicles owned and maintained in the District of Columbia by the United States or the government of the District of Columbia shall be registered and furnished identification tags without cost: And provided further, that the commissioners of the District of Columbia are authorized to establish such rules and regulations and to affix thereto such fines and penalties as in their judgment are necessary for the enforcement of this act and the regulations authorized hereunder."

The police regulations of 1921 (section 3, par. [a], art. 12) provide for the issuance of permits to drivers of automobiles and that the failure of a driver to exhibit such permit when required shall be punishable. See section 19 of article 12. An examination of the act of 1917 discloses the intent of Congress to make its provisions all-embracing, except as otherwise specified, that is to say, "that motor vehicles owned and maintained in the District of Columbia by the United States or the government of the District of Columbia" should be registered and carry identification tags, but that no fee should be exacted for such registration or tags. In view of the necessarily large number of these public vehicles in the District, the reason for bringing them within the purview of this act becomes apparent. One evident purpose of the act was to make it possible to identify traffic law violators, and it is clear, we think, that to have excluded this large class of vehicles would have frustrated to a considerable degree the purpose indicated. Moreover, it evidently was the view of Congress that a special provision was necessary to effect the exemption of this class of vehicles from the payment of fees for registration and tags.

[3,4] Congress has not enacted any legislation dealing directly with the issuance of permits, but there can be no doubt of the authority of the commissioners to promulgate regulations relating thereto, under the general powers conferred by the several Acts to which we have referred. See Siddons v. Edmonston, 42 App. D. C. 459. Such a regulation undoubtedly is reasonably necessary for public protection. Indeed, in view of conditions judicially known to exist in the District of Columbia, it might be suggested that the regulations are less drastic than the situation demands.

[5,6] Congress having clearly indicated an intent that motor vehicles of the United States and the District of Columbia are to be registered and carry identification tags, and, there being no provision exempting drivers from the requirements of the police regulations respecting permits, we think the conclusion irresistible that such drivers are not exempt therefrom. While the agreed statement of facts merely recites that a permit had been issued to the plaintiff in error, it may be assumed that no fee had been exacted therefor. Thus the police regulations with respect to permits have been brought into harmony with the statute respecting registration and identification tags. It is even more important, in our view, that the drivers of all vehicles within the District should satisfy the requirements of the traffic regulations as to their qualifications to operate motor vehicles than that those vehicles should be registered and carry identification tags. The vehicles are dangerous only when driven, and, unless all drivers are to be subject to these reasonable regulations, there can be no real protection to the public. After all, as already intimated, it is a question of congressional intent, which is clear in this case.

It follows that the judgment must be affirmed.

Affirmed.