Opinion by
Hannum,
On April 24, 1967, defendant-appellant, Charles Bowser, was brought to trial before the Honorable Theodore S. Gutowicz without a jury on charges of larceny, possession of burglary tools, malicious mischief, and conspiracy, as of bill numbers 615-618, January Sessions, 1967. Indicted as a co-defendant was one Rudolph Fleming, never brought to trial, owing to his demise. A demurrer was sustained to the malicious mischief bill, No. 617, and the defendant was found guilty of the remaining charges. Timely motions in arrest of judgment or for a new trial were made and denied. A sentence of not less than one nor more than five years was imposed on the larceny bill, along with concurrent sentences of one to three and one to two years imposed on the burglary tools and conspiracy bills, respectively. This appeal followed.
On December 5, 1966, at about 1:30 p.m., Officer Benham saw the defendant, with one Rudolph Fleming, in a 1957 Cadillac automobile, stopped in the middle of Wilder Street, approaching its intersection with 2nd Street in Philadelphia. Benham testified: “Like you would come up and stop for a stop sign; well, they just stopped there. The car was shut off and just stopped right in the middle of the street.” The Cadillac was about 25 feet from a Bell Telephone Company public phone booth which was later found to have had its upper housing removed so as to expose the cash box.
Officer Benham testified that upon observing the vehicle he saw two men “hunched over” inside it and as he stopped his police car, the two defendants “sat upright.” When Officer Benham asked the men for an owner’s card and operator’s license, neither was' produced.
As he approached the vehicle, Officer Benham observed “several coins, of IT. S. currency, on the front *497 seat, in dimes, nickels and quarters; also, on the back seat was a rag and a can of Murray’s Hair Pomade. On the floor, behind the front seat, was a crowbar, approximately 12 inches in length. On the front, on the hump of the front floor, was a red container containing several tools.” On cross-examination the officer stated that when he first looked into the car he saw “several dimes and quarters on the floor, all over the seat.” The red container included a four or five ounce glass, a screwdriver about 5% inches long, another screwdriver about 10 inches long, a third screwdriver about 8y2 inches long and a short-bladed linoleum knife.
Upon seeing the above items in the vehicle, the arresting officer, Benham, directed the defendants to drive the car to the police station for investigation, at which time Officer Benham followed it in his police car. Officer Benham searched the Cadillac at the police station.
The Cadillac’s glove compartment yielded a second' box of hair lanolin, two pairs of black gloves, a plastic tumbler with a broken glass inside and a long, bent spoon. The officer also found 70 dimes in the glove compartment and 32 dimes and 2 nickels under the front seat. Officer Benham noticed that the coins found on the seat and floor of the car were greasy.
Defendant Bowser was searched at the police station and was found to have 33 dimes, one nickel, four pennies and one dime-sized slug on his person. Fleming was found to have $7.12 in coins on his person. .
Mr. C. Raymond Miller, a security agent with the Bell Telephone Company of Pennsylvania, testified that later the same day, he inspected a pay phone located about 25 feet from where the Cadillac had been parked. Miller testified that the upper housing of the pay phone had been removed, exposing the cash box, *498 and that scratch marks were found on the lower housing.
Miller stated that the aperture leading into the cash box was about one inch square so that a finger could not enter very far into the four-inch square cash box located below the aperture. He stated that it was impossible to testify as to whether any money had been removed from the telephone but that there was a white vaseline-type substance at the aperture and three or four dimes and nickels lying at the bottom of the cash box. When asked how coins could be removed from an opened cash box, Miller testified: “Through the use of this vaseline-type substance and an ice cream spoon or coffee spoon inserted into the aperture and stirred around, the coins stick to the substance, it is pulled out into a bag or cup, and continued until it’s down to the point where you can reach no more.” Miller thereafter identified the long, bent spoon and Murray’s Hair Pomade found in the Cadillac as the type of equipment to which he was referring in the above quoted testimony.
The defendant contends that his arrest was unlawful because the arresting officer did not observe any unlawful act and did not have knowledge of any felony with which he could have been charged at that time, and that as a result the evidence seized was inadmissible.
Defendant further contends that the search of his person and automobile at the police station was also unlawful because it was not incident to his original detention.
The defendant’s first contention is answered by the case of Commonwealth ex rel. Bowers v. Bundle, 200 Pa. Superior Ct. 496, 189 A. 2d 910 (1963), where the officers stopped an automobile which was being operated without lights and, while examining the regis *499 tration card, they observed cases of whiskey in open view in the car. We held that the stopping of the automobile was proper for the protection of highway users and that the mere looking at an object which was plainly visible did not amount to a search nor does its taking amount to a seizure.
The Bowers case was cited with approval in Commonwealth v. Anderson, 208 Pa. Superior Ct. 323, 222 A. 2d 495 (1966), where two cruising police officers observed a car being operated erratically and stopped it to determine the condition of the driver. They observed a suspicious package in the ear and required the defendant to drive his car to the police station.
Judge Watkins, speaking for a unanimous court, said: “However the officers acted with great prudence. They could have arrested the appellant for a vehicular code violation then and there, but having seen the suspicious package decided to complete the investigation at the police station. To let the automobile go would invite the destruction of the contraband and the courts have made a distinction as regards reasonableness of search between buildings and motor vehicles.”
Judge Watkins also quoted from Ellison v. United States, 206 F. 2d 476, where it was said: “If an officer sees the fruits of crime — or what he has good reason to believe to be the fruits of crime — lying freely exposed on a suspect’s property, he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough, without requiring a police officer to free his mind of clues lying flatly before him.”
The foregoing language is particularly applicable* to the present case. The police officer saw the automobile stopped “in the middle of the street.” When the defendant was unable to produce a driver’s license or an owner’s card, the officer was fully justified in *500 taking the defendant and the car to the police station for further investigation to determine, inter alia, whether the car had been stolen. In this situation, he was not obliged to close his eyes to the burglary tools and the obvious fruits of a larceny which were exposed to his view. The defendant was properly arrested and the property taken was properly introduced into evidence.
With regard to the additional search of his person and the car at the police station, they flowed naturally from, and were part and parcel of, the normal and logical consequences of the arrest.
In Commonwealth v. Querubin, 211 Pa. Superior Ct. 360, 236 A. 2d 538 (1967), the lower court suppressed the evidence seized by the police at the police station where the defendant had been taken after his arrest, on the ground that the search was not contemporaneous to the arrest. We reversed, and approved the language of Charles v. United States, 278 F. 2d 386, 388-89 (C.A. 9th Cir. 1960), as follows: “It seems to us that a search of the person of the accused, even for the purpose of uncovering evidence of a crime other than that which is charged, is generally incident to a valid arrest. Power over the body of the accused is the essence of his arrest; the two cannot be separated. To say that the police may curtail the liberty of the accused but refrain from impinging upon the sanctity of his pockets except for enumerated reasons is to ignore the custodial duties which devolve upon the arresting authorities. Custody must of necessity be asserted initially over whatever the arrested party has in his possession at the time of apprehension. Once the body of the accused is validly subjected to the physical dominion of the law, inspections of his person, regardless of purpose, cannot be deemed unlawful,”
*501 It follows that the property taken at the police station was also properly introduced into evidence.
The defendant’s final contention is that the evidence was insufficient as a matter of law to sustain a conviction. The Commonwealth concedes that its evidence was circumstantial. Nevertheless, if believed by the trial judge, as it was, it established the guilt of the defendant. He took the stand and offered an explanation of his possession of the coins but his story was not believed by the trial judge. Judge Gutowicz said of defendant Bowser’s testimony: “The Court rejected his testimony as not worthy of belief and resolved the issue of credibility in favor of the Commonwealth’s witnesses.” The circumstantial evidence was sufficient to support the verdict. See Commonwealth v. Hicks, 209 Pa. Superior Ct. 1, 223 A. 2d 873 (1966). His motions in arrest of judgment and for a new trial were properly dismissed.
Judgment of sentence affirmed.