Haywood Idell TAYLOR, Appellant,

v.

UNITED STATES, Appellee.

No. 4955.

District of Columbia Court of Appeals.

Argued Sept. 16, 1969.

Decided Dec. 12, 1969.

James P. Riley, Washington, D. C., appointed by this court, for appellant.

Richard W. Perkins, Sp. Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., and Roger E. Zuckerman, Asst. U. S. Atty., were on the brief, for appellee.

Before HOOD, Chief Judge, and KELLY and KERN, Associate Judges.

HOOD, Chief Judge:

Appellant was convicted by a jury of carrying a pistol without a license.[1] His chief contention on this appeal is that the pistol should have been suppressed since it was seized as a fruit of an illegal arrest.

Police Officer LeDoux was dispatched to investigate an accident and upon arriving at the scene he observed that an automobile had collided with the rear-end of a tractor-trailer. Appellant was seated behind the steering wheel of the automobile and his wife was in the rear seat. Officer LeDoux requested both appellant and his wife to step out of the vehicle. In response to the officer's inquiry as to who was the operator of the automobile, appellant answered that he was the driver. However, appellant was unable to produce an operator's permit upon demand by the officer. Officer LeDoux told the appellant he was under arrest[2] and called for a patrol wagon to take appellant to the precinct station. About the same time as Officer Cody arrived with the patrol wagon,[3] a witness to the accident and the driver of the tractor-trailer identified appellant's wife as the driver of the automobile. She denied being the operator and could not produce an operator's permit. Appellant now claimed that he did not operate the vehicle. Officer LeDoux then also placed appellant's wife under arrest for operating a motor vehicle without a permit. Prior to appellant's entering the patrol wagon, Officer Cody searched him and found appellant to be carrying a pistol.

Appellant contends his arrest was illegal in that Officer LeDoux did not see a misdemeanor committed in his presence. Since he was not committing a felony, argues appellant, his arrest would have been valid only if the officer had observed him driving the automobile at the time of the collision, and this not being the case, the officer could not arrest appellant, thus making the search unlawful. We do not agree.

1.  D.C.Code 1967, § 22–3204.

2.  There appears to be some confusion as to whether appellant was arrested for operating a motor vehicle without an operator's permit (D.C.Code 1967, § 40–301 (d)) or for not exhibiting an operator's permit upon demand by a police officer (D.C.Code 1967, § 40–301(c)). However, for purposes of this appeal it does not matter which offense was the basis for the arrest since both offenses are misdemeanors that occur only while one is operating a motor vehicle.

3.  Officer Cody arrived on the scene about three or four minutes after Officer LeDoux called for the patrol wagon.

■ The Supreme Court has long recognized the common-law rule that a police officer may arrest for a misdemeanor without a warrant only if the offense is committed in his presence.[4] This rule has always been followed in the District of Columbia.[5] However, there has been much discussion as to when an offense is committed "in the presence" of an officer. We have reviewed many decisions (the courts are not in agreement) which have attempted to delineate the exact scope of "in the presence" and, suffice it to say, we do not think a discourse on the subject will be any more enlightening than what has already been written.

■ In Thomas v. United States, 134 U.S.App.D.C. 48, 412 F.2d 1095, 1096 (1969), the court said: "If it be assumed that the arresting officer was acting in good faith, the circumstances were such that it could be said that a misdemeanor took place in his 'presence' as distinct from 'within his view.' The former has customarily been thought to embody a less restricted spatial concept than the latter, and to comprehend awareness through senses other than that of vision alone." The officer is not limited to his sense of vision alone, i. e., it is not necessary for the officer to have actually seen every fact constituting the commission of the misdemeanor, but he may utilize all his senses.[6] The

use by the officer of all his senses of necessity contemplates that the officer will draw upon what is common knowledge under the circumstances.[7] Thus a misdemeanor is committed in the presence of an officer when, with the aid of all his senses and what is common knowledge under the circumstances, the officer has knowledge that such is the case.

[3] Congress has enacted statutes to regulate motor vehicles in the District of Columbia.[8] In particular, the law requires, among other things, for the safety of the public[9] that every person who wishes to operate a motor vehicle must obtain an operator's permit,[10] have it in his possession at all times when operating a motor vehicle and exhibit said permit to any police officer upon demand.[11] In Richardson v. District of Columbia, D.C.Mun. App., 134 A.2d 492, 493 (1957) we stated that while our statute relating to operators' permits did not contain a definition of "operate", a closely related statute provided:

> The terms "operate" and "operated" shall include operating, moving, standing, or parking any motor vehicle or trailer on a public highway of the District of Columbia. (Now D.C.Code 1967, § 40–101(j).)

We think Congress intended to include such situations—wherein a person is sitting

---

4. John Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729, 44 L.Ed. 874 (1900); Kurtz v. Moffitt, 115 U.S. 487, 6 S.Ct. 148, 29 L.Ed. 458 (1885).

5. Maghan v. Jerome, 67 App.D.C. 9, 88 F.2d 1001 (1937); Holmes v. United States, 56 App.D.C. 183, 11 F.2d 569 (1926). There are statutory exceptions. See D.C.Code 1967, § 4–140 (1969 Supp.).

6. Garske v. United States, 1 F.2d 620 (8th Cir. 1924); Ex parte Morrill, 35 F. 261 (C.C.D.Oregon 1888); United States v. Rembert, 284 F. 996 (S.D.Texas 1922); Griffin v. State, 200 Md. 569, 92 A.2d 743 (1952), cert. denied, 345 U.S. 907, 73 S.Ct. 647, 97 L.Ed. 1343 (1953); Miles v. State, 31 Okl.Cr. 4, 236 P. 907 (1925).

7. Ex parte Morrill, supra n. 6; Cave v. Cooley, 48 N.M. 478, 152 P.2d 886 (1944); State v. Koil, 103 W.Va. 19, 136 S.E. 510 (1927).

8. We are not here concerned with an appeal from a conviction for a violation of the motor vehicle laws but we will make reference to the motor vehicle laws only for the purpose of determining whether appellant's conduct might have been a misdemeanor for which he could have been arrested.

9. Mincy v. District of Columbia, D.C.App., 218 A.2d 507 (1966). See also Croson v. District of Columbia, 55 App.D.C. 122, 2 F.2d 924 (1924).

10. D.C.Code 1967, § 40–301(d).

11. D.C.Code 1967, § 40–301(c).

behind the steering wheel (the means by which a motor vehicle is usually operated) of an automobile at the point of a collision with another vehicle—within the definition of "operating". If an individual voluntarily chooses to stop his vehicle in the middle of the road and stands in that position, there is no doubt that the person would be "operating" the vehicle within the intendment of the statute. In the light of the purpose of the motor vehicle statutes we see no difference whether the automobile was brought to a stop voluntarily or involuntarily as a result of a collision.

When Officer LeDoux arrived at the scene of the accident he observed appellant sitting behind the steering wheel of an automobile which had collided with the rear-end of a tractor-trailer. Appellant told the officer he was the operator of the automobile but was unable to produce an operator's permit. It was quite obvious to Officer LeDoux that the automobile had been operated by someone when it collided with the truck. In these circumstances it was a legitimate inference that appellant had operated the automobile previous to the collision, at the moment of the collision and was continuing to operate the automobile in Officer LeDoux's presence [12] without a permit.[13] Appellant's failure to produce an operator's permit when requested to do so by Officer LeDoux was also a misdemeanor.[14] The fact that the automobile was incapable of forward movement at this time does not require a different result.[15]

To hold otherwise would be to hamper the police in the pursuit of their law enforcement activities. If the police were required to witness every collision on the public highways in order for a misdemeanor to have been committed in their presence, the police would be hindered in the effective administration of the motor vehicle laws, the public interest would not be protected and many law violators would escape prosecution. Congress never contemplated such a result when it enacted the motor vehicle statutes in the District of Columbia.

The search of appellant prior to his entering the patrol wagon was a standard police procedure to check for weapons [16] and was incident to a lawful arrest.

Affirmed.

12. *See* McDonald v. Justice Court, 249 Cal. App.2d 960, 58 Cal.Rptr. 29 (1967); Halko v. State, 54 Del. 180, 175 A.2d 42 (1961).

13. D.C.Code 1967, § 40–301(6) (d).

14. D.C.Code 1967, § 40–301(6) (c); District of Columbia v. Perry, D.C.App., 215 A.2d 845 (1966).

15. *See* Cochran v. M & M Transp. Co., 112 F.2d 241 (1st Cir. 1940); Di Cecca v. Bucci, 278 Mass. 15, 178 N.E. 447 (1932).

16. *See* West v. United States, D.C.App., 249 A.2d 740, 741 n. 5 (1969).