## Commonwealth v. Hoover

*Jay L. Benedict,* for Commonwealth.
*Blake E. Martin,* for defendant.

EPPINGER, P. J., December 30, 1971.—Defendant was charged with operating a motor vehicle while under the influence of intoxicants, a misdemeanor under The Vehicle Code of April 29, 1959, P. L. 58, sec. 1037, 75 PS § 1037. In this proceeding to suppress the results of a breath test and a walk-the-line test for intoxication, the evidence showed that the arresting officer found defendant near a vehicle that had crashed into a bridge abutment in such circumstances that a reasonable person would conclude that he was the driver of the automobile when it struck the bridge. Upon arrival at the scene, defendant told the officer he was the driver and that someone had forced him off the road. The officer then noticed the odor of alcohol on defendant's breath, saw he staggered, observed he had glassy eyes and appeared to be poorly coordinated.

On the basis of what he saw when he arrived at the scene and defendant's statement that he was the driver, and after observing defendant's physical condition and giving some field sobriety tests, the officer concluded defendant was driving under the influence of intoxicants. The officer asked defendant if he'd submit

to a chemical analysis of his breath, and he consented. Later, he was placed under arrest, advised of his rights and then the test was given. The results showed defendand to have a 0.15 percent level of alcohol in his blood.

Defendant contended the results of the tests should be suppressed because (1) the arrest was illegal, (2) he had not been given the Miranda warnings[1] before the walk-the-line test was administered and (3) he had not been advised of the right to have a physician of his own choosing present to administer a chemical analysis test. We declined to suppress the evidence.[2]

(1) *Was the arrest legal?*

First, we hold the arrest was legal. Rule of Criminal Procedure 102(3) permits an arrest on view, without a warrant, when the offense is a felony or misdemeanor committed *in the presence* of the arresting officer. This rule is very similar to section 1204 of The Vehicle Code, 75 PS §1204, making it lawful for a peace officer in uniform and displaying a badge or other sign of authority to arrest *on view,* anyone committing any crime designated a felony or misdemeanor under the act. The difference seems slight, but distinctions have been drawn. *In the presence of the arresting officer* as distinct from *within his view* has customarily been thought to embody a less restricted spatial concept and, therefore, comprehends awareness through senses other than vision alone: Thomas v. United States, 134 U.S. App. D.C. 48, 412 F.2d 1095 (1969). So an officer is not limited to vision alone for a crime to have been committed in his presence. He may utilize all of his senses. Since rule 103(3) permits such arrests in all misdemeanors and came after the enactment of The Vehicle Code, we may decide the case under that rule.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] On November 15, 1971, defendant entered a plea of guilty to the offense and was sentenced.

Both Reese License, 51 D. & C. 2d 112, and Commonwealth v. Gilliland, 51 D. & C. 2d 35, suggest that unless the officer actually sees defendant operate the automobile, the offense is not committed in his presence. These decisions seem to mean that in most accident investigations it is no longer possible for the investigating officer to arrest on view. He would be required to leave the scene, despite his duty to unsnarl traffic and to make a proper investigation, go to a justice of the peace, obtain a warrant and then return to the scene, still hoping the drunken operator is around. For unless he can arrest on view, he'd have no right to detain the operator.[3]

We cannot concur with this reasoning. We believe when an officer sees a person at or near an automobile after an accident under such circumstances that would lead a reasonable person to conclude the car has recently been operated and that the person is the operator, and there is also reasonable grounds to believe the operator is under the influence of intoxicants, the offense of operating under the influence has been committed in the presence of the officer and he may arrest the operator on view. This would be especially true if the operator tells the officer he was driving the automobile.

Our research did not reveal any Pennsylvania appellate court cases specifically on point. However, in Commonwealth v. Bowser, 212 Pa. Superior Ct. 494, 243 A. 2d 205, where a police officer observed an automobile stopped in the middle of a street and the driver

---

[3] Some jurisdictions have met the problems created by this construction of the "arrest on view" statutes by legislation permitting warrantless arrests of persons involved *in traffic accidents*. See People v. Ashley, 95 Cal. Rptr. 509 (Cal. App. 1971); City of Minot v. Knudson, 184 N.W. 2d 19 (1971) (North Dakota); Ross v. State, 215 So. 2d 33 (1968) (Florida), and Erickson v. City Court of the City of Phoenix, 458 P. 2d 953 (1969) (Arizona).

was unable to produce an operator's license and owner's card, the officer was held to have been justified in taking the driver and the automobile to the police station for further investigation to determine whether the vehicle had been stolen. The court held the officer was justified incidental to this lawful arrest in seizing from defendant's automobile the burglary tools and obvious fruits of a larceny which were exposed to the officer's view. This case seems to hold that the arrest was lawful though the officer had not seen anyone drive the car.

The Supreme Court of Delaware held in Halko v. State, 175 A.2d 42 (1961): "Where officer sees for himself a driver dead drunk at the wheel of automobile under circumstances indicating that automobile has recently been operated, and he is assured by another driver that man at wheel had actually been driving, arrest is made for violation 'on view' within the meaning of the statute. . . ."

In that case, the officers observed defendant in an automobile outside a place of business at 2 o'clock Sunday morning. The headlights were on. The court concluded that it was a reasonable inference that he (the defendant) drove the car there. In addition, others told the officers defendant had been driving.

The Delaware court relies on State v. Koil, 103 W. Va. 19, 136 S.E. 510, 511 (1927), and State v. Lutz, 85 W. Va. 330 (1919), 101 S.E. 434 (1919), for the following holding:

"An offense can be said to be committed in the presence of an officer only when he sees it with his own eyes, or sees one or more of a series of acts constituting the offense, and is aided by his other senses or by information as to the others. . . ."

As the Delaware Supreme Court points out, these

cases are not in point on the facts and the holding may be only dictum. But we agree that they embody a sensible rule under modern conditions.

The District of Columbia Court of Appeals in Taylor v. United States, 259 A.2d 835 (1969), adopted the same point of view. A police officer was dispatched to investigate an accident and found an automobile collided with the rear end of a tractor-trailer, defendant seated behind the steering wheel of the car and his wife in the back seat. Though he was unable to produce an operator's permit, defendant told the policeman he was the driver.

Saying the Supreme Court has long recognized the common-law rule that a police officer may arrest for a misdemeanor without a warrant only if the offense is committed in his presence, the court observed that the officer is not limited to his sense of vision alone, is not required to actually see every fact constituting the offense, but may utilize all of his senses. The use of those senses, the court said, contemplates that the officer will draw upon what is common knowledge under the circumstances. Thus, the court concluded, a misdemeanor is committed in the presence of an officer when, with the aid of all his senses and what is common knowledge under the circumstances, the officer has knowledge that such is the case. An arrest for operating without a permit was valid.

The court went on to say that to hold otherwise would be to hamper the police in pursuit of their law enforcement activities. If the police were required to witness every collision on the public highway in order for a misdemeanor to have been committed in their presence, they would be hindered in the effective administration of the motor vehicle laws, public interest would not be protected and many violators

would escape prosecution. "Congress never contemplated such a result when it enacted the motor vehicle statutes for the District of Columbia."

In Dixon v. State, 232 A.2d 538, (Court of Special Appeals) (1967), 1 Md. Appeal 623, defendant identified himself as the driver of a car involved in an accident, was unable to produce his operator's license or registration card and appeared to be under the influence of intoxicants. Under a Maryland rule that if a misdemeanor is being committed in the presence or view of an officer he may forthwith arrest without a warrant, arrest of this defendant was found valid. The court said such offenses are committed if, through his senses, an officer has knowledge of or facts or circumstances sufficient to justify a sincere belief that the accused is committing a misdemeanor in his presence.

In State v. DelVecchio, 182 A.2d 402 (1962) (Connecticut), the court laid down the following rule:

"An accused is lawfully 'taken or apprehended in the act, if circumstances observed by the officer preceding the arrest, viewed in the light of common experience and his own training and experience, give him probable cause to believe that a crime was being *or had just been committed.*" (Italics supplied.)

There have been similar holdings in Kansas: State v. Cook, 399 P.2d 835 (1965), and New Mexico, Kay v. Cooley, 152 P.2d 86.

An early case in the New Jersey Supreme Court, State v. Murphy, 134 Atl. 900 (1926), held that though the officer did not see him operate, an arrest of a defendant for driving under the influence of intoxicants was not illegal if defendant was intoxicated at the time of arrest and admitted he had been driving. There are similar holdings in the cases of In re Emberton, 109 N.J., Superior Ct. 211, 262 A.2d 899, (1970), and in State v. Macuk, 57 N.J. 1, 268 A.2d 1, (1970). Cf. State

v. Gillespie, 100 N.J. Superior Ct. 71, 241 A.2d 239 Superior Court (1968), where defendant denied driving the car and the arrest was held to be invalid.

Macuk quoted the following rule: "A valid arrest without a warrant requires the offense be committed in the 'presence' of the officer unless the offense is punishable by imprisonment for more than a year in a state prison." The court then said that "presence" sums up the requirement that the officer know of the event by use of his senses and the admission of the offense to an officer by defendant is sufficient.

The court then said even if the arrest had been invalid, an examination for intoxication over defendant's objection is justified as an emergency measure to insure the state against loss of evidence of defendant's guilt of an offense which poses an extremely grave menace to public safety and welfare.[4]

(2) *Must defendant be given Miranda warnings before a walk-the-line sobriety test?*

Defendant was ordered by the arresting officer to perform a "walk-the-line" test before he was given the Miranda warnings. He argues that testimony relating to this test should be suppressed. We do not agree.

We found only one Pennsylvania case directly on point and this was the one cited by the defendant, Commonwealth v. Bloom, 50 D. & C. 2d 516, where the court suppressed the evidence. While we have the greatest respect for that court, we do not think Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694; Schmerber v. California, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908, or Holt v. United States, 218 U.S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, require this result.

---

[4] For cases seeming to require the officer to actually see the actual operation of the vehicle for an "in the presence of" or "on view" arrest to be legal see June v. Tofany, 311 N.Y. S. 2d 782 (New York), and State v. Hill, 178 S.E. 2d 462 (1971) (North Carolina).

So, we hold an officer is not required to give the Miranda warnings before giving physical performance sobriety tests where he observes other indicia of the operator's being under the influence of intoxicants.

In State v. Faidley, 202 Kan. 517, 450 P. 2d 20, the Supreme Court of Kansas dealt with this exact problem, holding that nontestimonial conduct of defendant, such as the performance of a heel-to-toe balance test ordered by an officer did not violate defendant's privilege against self-incrimination even though he had not received the Miranda warnings. There, the officer observed a weaving truck on the highway, stopped it, detected the odor of alcohol on the driver's breath, and noticed his balance was uncertain. The officer then asked the driver for a coordination test, walking heel-to-toe or walking a straight line. Defendant tried but couldn't do it, so the officer arrested him and placed him in the patrol car, and then fully advised him of his Miranda rights.

After reviewing the decisions in Schmerber, Holt and United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, the court said:

"We have no doubt that compelling the defendant to perform the coordination or sobriety test on the highway for observation by the patrolman involved no compulsion of the accused to give evidence having testimonial significance. At most, it was compulsion of the defendant to demonstrate his ability to walk, after being requested to walk in a particular manner. There was no forced communication by the defendant to disclose any knowledge he might have 'from his own mouth'. (Miranda v. Arizona, supra, 384 U.S. 460, 86 S. Ct. 1620, 16 L. Ed. 2d 715.)

"This case presents no difference in principle from compelling Schmerber to provide a blood sample or Holt to put on the blouse, and, as in those instances,

is not within the scope of the privilege. In short, the potential application of the rule of Miranda became irrelevant to the defendant's nontestimonial conduct on the highway which (the officer) put in evidence by detailing the results of the coordination or sobriety test. The privilege of silence guaranteed by . . . the Fifth Amendment was not abridged by the use of the evidence at the time it was introduced."

The court in People v. Suchocki, 291 N.Y.S.2d 237, 57 Misc. 2d 36, came to the same result. There, defendant objected to the introduction of the results of the performance and Breathalyzer tests. Citing Schmerber, the court said: " 'Compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate the Fifth Amendment' . . . and 'the privilege protects an accused *only* from being compelled to testify against himself, or otherwise provide the state with evidence of a testimonial or communicative nature." The court then acknowledged that picking up coins, walking straight lines and turning are communications, but held they are not within the purview of the privilege against self-incrimination, citing Gilbert v. State of California, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178, for the proposition that not all communications are within the cover of the privilege.

Explaining the decision, the court further stated:

"The Form 38 Observational tests, coupled with the Breathalyzer, are . . . reasonable means of securing safety to the users of the highway consonant with due process. The observations of the police officers during the Performance and Breathalyzer tests constitute real and/or physical evidence not within the protection of the privilege against self-incrimination. These tests in no way fall within the framework of compelled responses which the Miranda decision seeks to protect.

The Form 38 and Breathalyzer tests merely require the accused to exhibit himself for observation and 'compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any *knowledge* he might have.' Wade, supra, 388 U.S. at 222, 87 S. Ct. at 1930."

It seems to us that in Commonwealth v. Bloom, supra, the court placed emphasis on a statement in Schmerber that to compel a person to submit to testing to determine guilt on the basis of physiological responses, whether willed or not, is within the purview of the Fifth Amendment protection. We think that particular statement has no significance here. Undoubtedly, the kind of physiological responses the court was alluding to were those that appear in a lie-detector examination. Questions are asked of suspects and from recorded body reactions, the examiner is supposed to be able to determine whether the suspect is telling the truth or not. It is obvious that that kind of examination comes within the Fifth Amendment protection.

In Stewart v. Oklahoma, 435 P.2d 191 (1967), cited by the court in Commonwealth v. Bloom, the court held that sound motion pictures taken of defendant while he was taking sobriety tests (picking up coins, walking a straight line, standing erect with head turned to ceiling and with eyes closed, touching his nose with his fingers) and being interrogated, were not admissible as violating the Oklahoma constitution.

It is difficult from a reading of the opinion in the Stewart case to tell whether the court, which decided the case under the Oklahoma Constitution, was concerned about the photographed actions of defendant

or the record of what he said, the latter being clearly inadmissible unless the warnings had been given. But in Piqua v. Hinger, 15 Ohio St. 2d 110, 238 N.E. 2d 766 (1968), the Supreme Court of Ohio held that physical tests, whereby a person accused of operating a motor vehicle while under the influence of intoxicating liquor is required to write his name and address, to pick up coins placed on the floor, to close his eyes and touch his hand to his nose and to submit to a Breathalyzer test, and motion pictures made thereof, are real or physical evidence and not such communication or testimony of the accused as is protected by the constitutional privilege against self-incrimination. Testimony regarding the test and the films was not excluded by reason of the failure to advise the accused of his constitutional rights as required by Miranda and was admissible irrespective of whether such advice was given, citing Schmerber. The court pointed out that the questions asked defendant during the filming of the physical tests were solely for the purpose of getting defendant to speak and participate in the tests, and not for the substance of his answers.

(3) *Must defendant be advised of right to have his own physician make a breath or blood test before the State may do so?*

Defendant's final contention is that he should have been advised that he was permitted to have a physician of his own choosing administer a breath or blood chemical test in addition to that administered at the request of the Commonwealth, and that the results of such tests would also be admissible in evidence: Section 624.1(g) of The Vehicle Code, 75 PS §624.1(g).

On this subject, there are two lines of authority in Pennsylvania. Commonwealth v. Dierkes, 51 D. & C. 2d 389 (Delaware County), held that, under Section 624.1(g), the legislature intended to impose a duty

upon the police officer to advise defendant of his right to an additional chemical test and that for failure of the officer to perform this test, the only sanction available to the court is to suppress testimony about the test.

Commonwealth v. Morrison, 20 Cumb. L. J. 93 (Cumberland County), held that had the legislature intended to impose a duty on the officer to advise a defendant that he was permitted to have his own physician make a breath or blood chemical test, it would have said so.

Section 624.1(g) of The Vehicle Code was amended after the Schmerber decision which gave the State the right to obtain a blood sample from a defendant, forcibly, if necessary, without violating defendant's constitutional rights.

People v. Kerrigan, 154 N. W. 2d 43, 8 Mich. App. 216 (Ct. of Appeals, 1967), cited in both of these Pennsylvania decisions, points out that under a Michigan statute, the right of defendant to have the additional test is statutory and not constitutional. The court then says:

"While an accused must be advised of many constitutional rights, he need not be advised of all of his statutory rights unless the statute expressly requires it."

If no constitutional rights of defendant are violated under the Schmerber case in the taking of blood, without giving any advice at all, then this right to have a physician of his own choice also make a test is statutory. Certainly, the legislature would not impose a duty to advise defendant of a right granted in the act without using specific words to that effect. It seems the sole purpose was to require authorities to permit a doctor of defendant's own choice to give him an additional test if he asked for it.

So we agree with the decision of the Michigan and Cumberland County courts. Where the legislature in section 624.1(h) of The Vehicle Code did not expressly require the police to advise defendant he could have his own physician make a chemical test for intoxication and there is nothing in the act itself to indicate such an intention, the law does not impose upon the officer the burden of giving such advice before administering the test for the Commonwealth.

At the conclusion of the suppression hearing, we made an order refusing to suppress the results of the breath and the walk-the-line tests, and we are now filing this opinion in support of that order.